UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v.-                                                               S8 16 Cr. 809 (VM)

RANDY TORRES,
a/k/a "Rico"
WALSTON OWEN,
a/k/a "Purpose"
a/k/a "Purp"
CHARLES VENTURA,
a/k/a "Gutta"

Defendants

---

# **CHARLES VENTURA RESPONSE TO THE GOVERNMENT'S MOTIONS *IN LIMINE***

*Attorneys for the Defendant*
John Burke, Esq.
LAW OFFICE OF JOHN BURKE
(347) 278-1090

Christopher Wright, Esq.
WRIGHT LAW OFFICE
(212) 822-1419

Charles Ventura objects to the jail call made by Victim-1 on October 22, 2017 being admitted into evidence. Ventura also objects to proof of the Chafla and Suazo homicides being admitted as evidence against him.

I. <u>THE JAIL CALL OF VICTIM - 1 SHOULD NOT BE ADMITTED INTO EVIDENCE BECAUSE IT IS HEARSAY AND EXTREMELY PREJUDICIAL</u>

The defense maintains and renews those arguments contesting the admission of this phone call previously made in its submissions of August 15, 2019 and December 23, 2019. The Government's *motion in limine* reinforces the defense's position that this statement is inadmissible hearsay and should be barred from trial. The Government's transcript of the call clearly demonstrates the hearsay conjecture that forms the basis of the statement.

> Katchee: ... I ain't know, you been shot, who shot you? Really?
> Victim - 1: Stratford nigga Charlie. Because he thought I was Don.

Victim - 1's hunch regarding the shooter's state of mind offered two months after the shooting is clearly inadmissible hearsay. Victim - 1's conversation with unknown people on Stratford seems to indicate that a member of the Bloods was shot. It does not support the conclusion that Victim - 1 was shot because the shooter thought he was Don.

> Victim - 1:... I'm telling you like, yeah, what's Crackin(?), what's going on at the Bronx River and anything like yeah, we just shot some blood nigga over there.

Victim-1 also appears to be from a completely different group than those people associated with Charles Ventura. It seems that Victim-1 claims to be a "silent Murder Gangsta Crip, PG gangster". Upon information and belief the group is based in a different county from

1

the Stratford group and has no interaction with them. The individuals Katchee and Pun also seem to be from a different sect separate and apart from the one described in the indictments. The statements made by Victim-1 are not made in furtherance of the charged conspiracy and are inadmissible under FRE 801(b)(2)(e).

The Government contends that Victim-1 jail phone call is admissible pursuant to the co-conspirator *exclusion* to the hearsay rule created by Fed. R. Evid. 801(d)(2)(E), which provides that:

> "A statement is not hearsay if — the statement is offered against a party and is a statement by a co-conspirator or a party during the course and in furtherance of the conspiracy . . ."

Under that rule a co-conspirator's statement is admissible only if this Court finds the following two factors are met by a preponderance of the evidence: "first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of the conspiracy." *United States v. Gigante*, 166 F.3d 75, 82 (2nd Cir. 1999).

"It is important to bear in mind that "a conspiracy existed" only if the Court finds by a preponderance of the evidence that there was **an agreement between the defendant and the declarant to commit a crime.**" *United States v. Romanello*, 10-CR-929 (ILG) (E.D.N.Y. Jan. 2, 2012). A general undefined conspiracy between alleged members of a large national gang with thousands of members will not satisfy the co-conspirator exclusion to hearsay. Indeed, the Circuit was quite clear in *Gigante*, where it wrote:

"However, even in the context of organized crime, there is a limit to the proper use of 801(d)(2)(E) to admit co-conspirator testimony. The district court in each instance **must find the existence of a specific criminal conspiracy beyond the general existence of the Mafia**. . . . The district court's rationale would allow the admission of any statement by any member of the Mafia regarding any criminal behavior of any other member of the Mafia. . . it must be a conspiracy with some specific criminal goal in addition to a general conspiracy to be members of the Mafia. **It is the unity of interests stemming from a specific shared criminal task that justifies Rule 801(d)(2)(E) in the first place— organized crime membership alone does not suffice**. " (emphasis added). *Gigante* at 82-83.

Certainly, what's good for the Mafia is also good for the Rollin' 30s Crips; the logic of the court in *Gigante* applies with equal force where members of separate sects of a large national gang (the Crips) are alleged to be co-conspirators simply based on their purported Crip membership. As a consequence, it is a prerequisite that this Court find a specific criminal agreement between Victim-1 and Ventura beyond mere membership in a national gang.

The Second Circuit has emphasized the import of finding such an agreement, writing:

"Where evidence is offered against a defendant consisting of a declaration of an alleged co-conspirator in furtherance of some criminal act . . . the court `in each instance must find the existence [between the defendant and the declarant] **of a specific criminal conspiracy [to do the criminal act].'** . . . The `general existence of the Mafia' does not suffice**. . . . This [is] unacceptable when the speaker and the defendant were not jointly engaged in the criminal venture

**that was being advanced by the speaker.**" (emphasis added). *United States v. Russo*, 302 F.3d 37, 44 (2nd Cir. 2002).

The mandate of *Russo* requires this court to find that there was a "specific criminal conspiracy" between Victim-1 and Ventura, mere alleged membership in the Crips will not suffice. Indeed, the Government has offered no evidence of any specific criminal conspiracy between Victim-1 and Ventura; rather their argument rests entirely on Victim-1's uncorroborated contention that he is a member of the Rollin' 30s Crips. The Defense is unaware of any witnesses or other evidence which will corroborate Victim-1's Crip membership, indeed it's just as likely that Victim-1's phone call was a self-serving statement to concoct gang membership so as to provide himself with higher status while in jail.

Even if Victim-1 is in fact a member of a subset of the Rollin' 30s, that alone does not establish they are members of a conspiracy. Consider the alleged murder of Nestor Suazo, who the Government contends was a member of Certified Harlem Crips, a subset of Rollin' 30s, and was allegedly murdered by rivals from another subset of the Rollin' 30s, Harlem Mafia Crips. It could not plausibly be argued that Suazo was in a conspiracy with Ventura (or his co-defendants) simply because they were members of the same parent-gang, Rollin' 30s Crips. Rather, it is quite common for various sects of large national gangs to have all manner of disputes and in fact be rivals; as evidenced by the supposed murder of Suazo by Rollin' 30s members. Clearly, membership in separate subsets of a large national gang do not make those members "conspirators." *See Russo, supra.*

Important as well, is the nature of Victim-1's jail phone call, which was in the context of his status as a crime victim. Not once does Victim-1 discuss any "specific criminal conspiracy" with Ventura; rather its clear from the phone call that Victim-1 and Ventura have no affiliation at

all.  The only connection between them is Victim-1's purported membership in a large national gang (the Crips) with many thousands of members.  There is nothing in Victim-1's jail phone call that could be fairly described as in furtherance of a specific criminal conspiracy with Ventura.

Victim-1's jail phone call plainly does not give rise to a unity of interests with Ventura of a shared specific criminal venture; indeed Victim-1 is not advancing any specific criminal conspiracy with Ventura in the disputed jail phone call.  As a consequence, Victim-1's October 22, 2017 jail phone call fails to satisfy the strict requirements of the co-conspirator hearsay exclusion. *See*, *Gigante* and *Russo, supra*.

The Government's other contention is that Victim-1's jail phone call is admissible as a statement against penal interest; in that Victim-1's purported Crip gang membership is in and of itself a statement against penal interest.  Victim-1's phone call could only be properly considered a statement against penal interest if Victim-1 believed his statement to be true because uttering it exposes him to "criminal liability." *See* Fed. R. Evid. 804(b)(3).

Simply stating that one is a member of criminal organization does not make someone subject to "criminal liability"; "mere membership in an organized crime organization is not a [crime]."  *United States v. Bonanno*, 683 F.Supp. 1411, 1429 (E.D.N.Y. 1988) (in the RICO context); *see also Rastello v. Warden*, 622 F. Supp. 1387 (S.D.N.Y. 1985).  Indeed there is nothing in Title 18 of the United States Code proscribing claimed membership in a criminal organization.  It stretches credulity to believe that Victim-1's purported gang membership in a jail house phone call would lead a reasonable person to believe that such a statement would expose him to criminal liability.  Significant here is that the gravamen of Victim-1's phone call was discussing his status as the victim of a crime and not a gang member.

## II. EVIDENCE OF THE CHAFLA AND SUAZO HOMICIDE SHOULD NOT BE ADMITTED AGAINST VENTURA

Ventura did not commit the Chafla or Suazo homicide. He was not at the scene of these crimes and did not plan or participate in these shootings. He had no prior knowledge about these incidents and is not charged with these crimes in the indictment. The mere fact that other individuals known to Ventura are accused of these crimes should not be used to taint Ventura in the eyes of the jury. To allow this evidence to the jury in regard to Ventura would be highly prejudicial thereby denying Ventura a fair trial. *See* Fed. R. Evid. 403.

If the Court sees fit to permit proof concerning these homicides as evidence of the overall Racketeering Conspiracy, Ventura asks for a limiting instruction safeguarding him from the prejudicial effects of this inflammatory evidence and ensure there's no suggestion that Ventura committed either of murders at issue. *See United States v. Brady*, 26 F3d 282 (2nd Cir. 1994).

Respectfully yours,
/s/
JB/dw JOHN BURKE
/s/
CHRISTOPHER WRIGHT
Attorneys for Charles Ventura