UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - v. -

RANDY TORRES,
    a/k/a "Rico,"
WALSTON OWEN,
    a/k/a "Purpose,"
    a/k/a "Purp," and
CHARLES VENTURA,
    a/k/a "Gutta,"

            Defendants.

S8 16 Cr. 809 (VM)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**THE GOVERNMENT'S REPLY IN SUPPORT OF ITS MOTIONS *IN LIMINE***

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Jessica Fender
Anden Chow
Jacqueline Kelly
Assistant United States Attorneys
    – *Of Counsel* –

# **TABLE OF CONTENTS**

ARGUMENT ................................................................................................................... 1

    I. The Co-Conspirator Statements Are Admissible .................................................... 1

    II. The Chafla and Suazo Murders Should Be Admitted Against All Trial Defendants ............ 3

    III. The Court Should Admit Evidence of Certain of Owen's Arrests ....................... 5

    IV. Portions of Victim-1's Recorded Phone Call Should Be Admitted .................... 8

    V. The Court Should Admit Evidence Regarding Torres' Flight from Prosecution ................ 11

CONCLUSION ............................................................................................................. 14

The Government respectfully submits this reply brief in further support of its motions *in limine* (*see* Dkt. No. 395). Because many of these issues were addressed in the Government's initial motion and its responses to the defendants' motions *in limine*, the Government will endeavor to address only new issues raised by the defense's responses.

## ARGUMENT

### I. The Co-Conspirator Statements Are Admissible

In defendant Randy Torres' response (*see* Dkt. No. 418), Torres reiterates his request that the Court require the Government to "immediately" identify all co-conspirator statements. The Government has addressed this argument at length. Suffice it to say that the demand for "immediate" identification of all possible co-conspirator statements and social media exhibits is not warranted, nor is it feasible; the Government will produce its exhibits, including those drawn from social media, sufficiently in advance of trial to enable the defense to object to those exhibits, should the defense believe it has a valid basis to do so.

As the Government also noted, the statements it seeks to introduce—examples of which were provided to the Court—can and should be admitted at trial under Rule 801(d)(2)(E). In response, Torres points to a social media conversation between "Bukc Rolla" and Trial Defendant Walston Owen, arguing that the conversation is merely a "social endeavor" not in furtherance of the conspiracy, and thus not admissible. (*See* Dkt. No. 418 at 3-4.) That argument is repeatedly contradicted by the very excerpt the defense cites. The conversation begins with Owen verifying his leadership lineup and establishing his *bona fides* to someone using the name "Bukc Rolla."[1]

---

[1] It bears noting that one of Owen's many Facebook vanity names, in addition to "stratfordbeiing.cripin" is "Purp Rolla," "Purp" being a reference to his street name, "Purpose," and "Rolla" being a reference to those who belong to the Rollin' 30s set of the Crips. The spelling

Owen confirms that "rico"—the street name of Trial Defendant Randy Torres—is indeed Owen's "OG," which cooperating witness testimony at trial will establish is a reference to an "Original Gangsta," a high-ranking leadership role within the Rollin' 30s Enterprise.  Bukc Rolla confirms that as a Rollin' 30s member himself, Torres also is ranked above Bukc Rolla – Torres is "basically all our OG."  Owen claims that he, too, is a high-ranking member of the Rollin' 30s: "I'm a OG Too Cuz."  In response, Bukc Rolla states that he is messaging Owen to strengthen ties amongst the members of the Rollin' 30s Enterprise, some of whom do not personally know each other.  Specifically, Bukc Rolla is trying to "reach out to every Trey owe[2] I can reach" because the connections amongst members of the Enterprise are weakening—that is, "faded"—and Bukc Rolla expresses his belief that it is important that members of the Rollin' 30s (the "30z") maintain strong bonds and get to "know each otha."  These statements, which serve to "provide reassurance" and "foster trust and cohesiveness," further the goals of the Enterprise and clearly are admissible.  *See United States v. Maldonado-Rivera*, 922 F.2d 934, 958-59 (2d Cir. 1990).

In any event, the defense will be equipped to raise specific issues with the co-conspirator statements prior to the start of trial, should they wish to do so.  But for all of the reasons already stated, the Court should admit co-conspirator statements in the categories identified by the Government in its motions *in limine*.

---

of the name "Bukc" also signifies Rollin' 30s membership: members of the Crips refuse to type the letters "ck" next to each other, as "ck" is taken to stand for the term "Crip killer."  Thus, in this instance, the letters have been inverted.

[2]   Cooperator testimony at trial will establish that "Trey owe" is a reference to the number 30 ("trey" standing for the number "3" and "owe" spelling out the letter "O"), and is yet another reference to the Rollin' 30s.

**II. The Chafla and Suazo Murders Should Be Admitted Against All Trial Defendants**

For the reasons set forth in the Government's motions *in limine*, evidence of the murders of Victor Chafla and Nestor Suazo is admissible against the Trial Defendants, who have been charged with participating in a racketeering conspiracy in which murder was one of the conspiracy's objects.

The response from Torres, seeking only to preclude the admission of the Suazo homicide against him, misapprehends the law and the relevant facts. In particular, Torres focuses on the notion that the incident resulting in Suazo's death "was to begin as a fight, not a shooting," and that "[f]isticuffs" are not racketeering acts. (*See* Dkt. No. 418 at 6.) This argument, which appears to be based on Torres' own self-serving version of that night's events, misses the mark entirely. Even assuming *arguendo* that Torres' version of events is true,[3] the planned assault of an individual within the Rollin' 30s who was perceived by Torres as challenging his leadership and thereby diminishing his status in the Enterprise certainly is admissible evidence of the charged Enterprise. The defense does not address the primary point: evidence of the Suazo homicide, as alleged, is direct proof of one of the elements the Government is required to prove to sustain its burden. Instead, the defense takes issue with the *strength* of the proof, stating that the Government's case is based "solely on unreliable and inconsistent hearsay." Respectfully, that is an issue for the jury to decide. It does not change the law, which makes clear that this evidence—which the Government believes *will* establish beyond a reasonable doubt at trial that Torres

---

[3]    Many of the statements Torres makes in his brief—for instance, that the "incident was to begin as a fight," that the fight "did not follow normal protocol by simply using one's fists," and that Torres and unnamed "others" "carried no weapons when they met with the 'Certified Harlem Crips'"—appear to be based entirely on Torres' own self-serving statements. The Government is unaware of any extrinsic evidence to support Torres' claims; thus, the only way in which Torres could make such claims at trial is if he intends to take the stand and testify as to these alleged facts.

ordered his co-conspirators to get the gun which resulted in Suazo's death—is admissible against Torres and the other Trial Defendants.

Ventura, by contrast, argues that evidence of the murders should not be admitted against him because he "did not commit" the murders, and such evidence would be "highly prejudicial." But Ventura was directly involved in a number of violent incidents, including the attempted murder of someone he believed to be an opposing gang member (during which he shot and seriously injured Victim-1), and evidence relating to this equally inflammatory incident will be introduced at the trial. Nor does the introduction of evidence of murders committed by RICO co-conspirators serve to create "substantial spillover prejudice for a defendant not charged with those murders." *United States v. Cortesiano*, 2012 WL 1450401, at *4 (E.D.N.Y. Apr. 26, 2012). Moreover, Ventura's continued affiliation and support of the Rollin' 30s after these murders were committed is direct evidence of a continued agreement to participate in the racketeering conspiracy charged in Count One. For all of these reasons, his argument should be rejected.

The Court should also reject Ventura's request for a "limiting instruction," as he is not entitled to one, nor does he propose any appropriate language. However, to the extent Ventura seeks assurances that there will be "no suggestion" from the Government that Ventura committed these murders at trial, the Government—having no evidence at this time to suggest Ventura's direct involvement in those murders—agrees that no such argument will be made to the jury.[4]

---

[4] Ventura states in passing that he "had no prior knowledge about these incidents." The Government is not in any position to confirm the truth of that self-serving statement, and notes that should Ventura wish to make such an argument to the jury, Ventura would have to take the stand and to testify to that effect.

4

### III. The Court Should Admit Evidence of Certain of Owen's Arrests

Owen, writing in response to the Government's Rule 404(b) notice, argues that his November 2008 and July 2015 arrests for weapons charges should not be admitted, both because the charges were dismissed and because these charges are "not necessary to prove the elements" of the crimes with which Owen is charged. As the Government addressed the basis for admitting evidence of each of these crimes in detail in its response brief, it will endeavor to be concise here.

With regard to Owen's argument that the evidence of his 2008 and 2015 gun arrests is "not necessary" to prove the Government's case, respectfully, that is not the standard by which the evidence is judged. The defense does not cite, nor is the Government aware of any law to support, the notion that only "necessary" evidence may be introduced to establish the elements of a charged crime. A defendant cannot prevent the Government from introducing relevant and otherwise admissible evidence simply because he believes it is not "necessary," nor can he dictate the terms of his trial. Evidence like this—that is, evidence establishing the relationship and trust between co-conspirators, the use of and access to firearms as tools of the trade, etc.—goes to the core of the facts the Government must establish beyond a reasonable doubt, and it is precisely the type of evidence the jury will expect to see in a trial such as this. *See, e.g.*, *Old Chief v. United States*, 519 U.S. 172, 188 (1997) (describing "the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be."). The Second Circuit has routinely approved the admission of previous crimes committed by co-conspirators to "explain how a criminal relationship developed" and "help the jury understand the basis for the co-conspirator's relationship of mutual trust." *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996); *see also, e.g.*, *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993) (courts have "repeatedly" allowed other act evidence "in order to help explain how the illegal relationship between participants in the

5

crime developed, or to explain the mutual trust that existed between coconspirators"); *United States v. Fabian*, 312 F.3d 550, 557 (2d Cir. 2002) (affirming admission of prior drug dealing convictions in robbery case where evidence showed co-conspirators' "long-standing friendship" and "made the allegation that [one co-conspirator] had served as a tipster for the robbery more likely"). For all of these reasons, Owen's "necessity" argument should be rejected.

Many of the arguments made by Owen in which he seeks to characterize and limit the import of this evidence are equally unavailing. For instance, he argues that his July 2015 arrest is irrelevant, because he was "not present inside the apartment when these firearms were recovered"—a statement which handily sidesteps the fact that the firearms were recovered inside Owen's apartment, and that cooperating witness testimony is expected to establish that Owen routinely kept firearms for the general use of the Rollin' 30s at his home. The argument also ignores that this arrest occurred in the summer of 2015, in the midst of a series of violent acts perpetrated by the Rollin' 30s against Opposing Crews.

Owen next takes issue with the fact that the charges stemming from the 2008 and 2015 incidents were dismissed. But this, too, is irrelevant. *C.f. United States v. Coonan*, 938 F.2d 1553, 1563 (2d Cir. 1991) (acquittal in state court of murder does not preclude federal authorities from charging same offense as predicate act in RICO prosecution); *United States v. Burden*, 600 F.3d 204, 229 (2d Cir. 2010) ("Under the dual sovereignty principle, a defendant may be prosecuted for the same conduct by more than one sovereign . . . because breaking the laws of each constitutes separate offenses."). Here, these incidents—both being occasions in which Owen was found to be with known members of the Rollin' 30s Enterprise who were in possession of multiple firearms—are direct evidence of the racketeering conspiracy with which he is currently charged.

Owen goes on to claim that if evidence relating to these arrests be admitted, the Court must also admit the fact that the cases were dismissed. But any number of factors may lead to a decision to dismiss an arrest, and many of these factors have nothing to do with the facts as perceived by the witnesses or the strength of the case against the defendant. To admit evidence as to the ultimate disposition of a state case—a distinct and ultimately irrelevant prosecution—would create a significant risk of jury confusion. *See United States v. Rodriguez*, 582 F. Supp. 2d 486, 487 (S.D.N.Y. 2008) (VM) (granting Government motion *in limine* to preclude the defendants from introducing evidence about or otherwise eliciting or referring to the dismissals of defendants' prior arrests).

Finally, Owen argues that this evidence, if admitted, will be highly prejudicial to him. Given the nature of the charges he is facing, which include his participation in a years-long, violent racketeering conspiracy involving murders and attempted murders, as well as firearms charges relating to a drive-by shooting in which Owen seriously injured two innocent bystanders, it cannot seriously be argued that evidence relating to two prior gun arrests is *unfairly* prejudicial. *See United States v. Roldan Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) ("Other act" evidence that is neither "more sensational" nor "more disturbing" than the charged crimes is not unfairly prejudicial); *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000) (same). Indeed, "[e]ven the introduction of evidence of murders committed by RICO co-conspirators does not create substantial spillover prejudice for a defendant not charged with those murders." *United States v. Cortesiano*, 2012 WL 1450401, at *4 (E.D.N.Y. Apr. 26, 2012).

Should the Court determine that these incidents cannot be introduced as direct evidence, but only under Rule 404(b), the Government will work with the defense to draft an acceptable limiting instruction.

**IV. Portions of Victim-1's Recorded Phone Call Should Be Admitted**

As detailed in the Government's motion *in limine*, the statements in Victim-1's recorded phone call regarding his Rollin' 30s membership and the shooting by Ventura ("Charlie") are admissible as co-conspirator statements and statements against penal interest. Torres and Ventura have opposed this motion. Torres argues that the first portion of the call, during which Victim-1 discusses his membership in the Silent Murder Gangster Crips, is inadmissible as irrelevant. Both Torres and Ventura argue that the second portion of the call, during which Victim-1 discusses the shooting is also inadmissible as hearsay and speculation. These arguments fail.

As an initial matter, the Government agrees that certain portions of the call need not be admitted at trial. Rather, these portions were provided to the Court to assist the Court in understanding the necessary context and background to the call, and to establish that the call was, indeed, between co-conspirators and therefore admissible under Rule 801(d)(2)(E). *See Bourjaily v. United States*, 483 U.S. 171, 178-79 (1987) ("Congress has decided that courts may consider hearsay" in making preliminary factual determinations relevant to Rule 801(d)(2)(E)). Specifically, as to the portion of the call between Victim-1 and "Katchee," the Government only seeks to admit the portion of the call where Victim-1 initially identifies himself in the pre-recorded announcement as a "Big Crip" and goes on to give his name as ▓▓▓▓▓▓▓▓▓ (*see* Ex. 1 at p. 2 ll. 1–9), and then identifies himself as "Silent Murder Gangsta Crip, OG gangster" (*id.* at p. 3, ll. 1–3).

Moreover, the Government is not seeking to admit any of the portion of the call in which Katchee and Pun talk amongst themselves. (*id.* at 4–7). These pages were provided because they are important to the Court's understanding of the remainder of the call. For instance, at page 6, Katchee represents repeatedly that "▓▓▓▓" is "official Crip." And at page 7, Pun tells Katchee

8

that Victim-1 cannot be disciplined ("I can't even give him a violation") because he had been shot and is not in good shape (". . . he got shot, so I can't even touch him, bro . . ."). These statements, while not independently admissible, provide crucial context for the call. They, along with Victim-1's statements earlier in the call, identify Vicitm-1 as a Rollin' 30s member who has recently been shot.[5]

With that background, the remainder of the call—during which Victim-1 discusses his shooting with a fellow gang member—is admissible as a co-conspirator statement, because (1) "a conspiracy existed that included the defendant and the declarant;" (2) "the statement was made during the course of and in furtherance of that conspiracy." *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999); *see Bourjaily*, 483 U.S. at 175.

*First*, as set forth in the Government's motion *in limine*, the evidence at trial will show that both Victim-1 and Ventura were members of the same conspiracy. This conspiracy is the same, or at the very least, factually intertwined with the charged Rolled 30's racketeering conspiracy. *United States v. Stratton*, 779 F.2d 820, 829 (2d Cir. 1985). Victim-1, as he stated in the call, is part of the Silent Murder Gangster Crips ("SMC") and Ventura is a member of the Stratford line-up of the Harlem Mafia Crips ("HMC")—both subsets of the Rollin' 30s who are closely allied with each other. Indeed, as evidenced during the recorded call, because of the relationship between SMC, Victim-1 freely went to Stratford Avenue after he was shot, and he visited with members of the Stratford HMC line-up who were eager and willing to recount to Victim-1 that they had "just shot some Blood n***** over there," whom Victim-1 identifies as "Don."

---

[5]   The shooting of Victim-1 occurred on or about September 6, 2019 and the recorded call was made on or about October 22, 2017.

Ventura incorrectly argues that the Government has to establish a "specific" criminal agreement between Victim-1 and Ventura and that, in order for the call to be admitted, Victim-1 would have to be discussing a "specific criminal conspiracy with Ventura." These arguments overstate the legal standard: all that is required is a conspiracy existed between the defendant and the declarant. The evidence of that conspiracy may be supported by inadmissible hearsay. *See Bourjaily*, 483 U.S. at 178-79 ("Congress has decided that courts may consider hearsay" in making preliminary factual determinations relevant to Rule 801(d)(2)(E)).

*Second,* it is likewise clear that Victim-1's statements were made in furtherance of the conspiracy. Victim-1's statements center on a significant event in the conspiracy—Ventura's targeting and shooting of a known rival, during which Ventura inadvertently injured one of their own. In addition, Victim-1 and Katchee discussed the current status of the Stratford Rollin' 30s line-up, as their leader "Purp" (Walston Owen) was currently incarcerated. These statements further the purposes of the Enterprise to apprising another member of the conspiracy of current events and promoting cohesiveness. *See United States v. Salerno*, 868 F.2d 524, 535-37 (2d Cir. 1987); *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991).

Ventura and Torres argue that these statements are nonetheless inadmissible because they contain speculation by Victim-1 as to what happened. Nothing in the actual content of the call, however, supports that assertion. Rather, Victim-1 is reporting actual events as they happened—including what he was told by his co-conspirators when he went to Stratford after the shooting:

*Victim-1:* So in that process, in that process, I was going to go get some backwoods to go back home, and before I even got to turn around, they be like [U/I] so before I even got to turn around and do anything, the little nigga had the gun already, so but I went to swing on 'em, Charlie took the shit and shot me, he seen me, once I fell and got back up, he see my face and he blew it, he left.

*Katchee:* So he thought you was Don?

>[*Operator:*   You have one minute left.]
>
>*Victim-1:*   Yeah, so when I went to, when I went to um, down Stratford they telling me, like, they don't know nothing because they can see me with the blue flag on my face, they like oh what's craccin', craccin', so I ain't tell 'em nothing, I'm telling them like, yeah, what's craccin', what's going on at Bronx River and they like, yeah, we just shot some Blood nigga over there.

Victim-1 does not muse to Katchee about what he thinks may have happened—he reports what he was *told*. It is no coincidence that what he recounts is corroborated by other evidence that will be introduced at trial, including video surveillance, evidence from Ventura's cellphone (which was found at the scene), and CW-2's anticipated testimony.

In sum, Victim-1's statements about being shot are admissible as co-conspirator statements. Finally, as set forth in the Government's motion *in limine*, even if the Court were disinclined to admit the statements as co-conspirator statements, they are nonetheless admissible as statements against penal interest. While Ventura is correct that mere membership in a gang may not rise to the level of criminal activity, Victim-1's statements detailing his status in the gang, as well as his knowledge of ongoing gang activities while he was a member, are indisputably probative of his agreement to participate in an unlawful criminal enterprise and would be admissible in a criminal trial against him.

## V. The Court Should Admit Evidence Regarding Torres' Flight from Prosecution

As the Government established in its motions *in limine*, Torres' flight from prosecution, after the indictment first charging him with racketeering-related crimes was unsealed, is probative of guilt, and should be admitted at trial.[6]

---

[6]   In fact, as the Government continues to prepare for trial, it has uncovered additional evidence—namely, the substance of text messages sent by Torres shortly after agents first tried to

In response, Torres does not argue the evidence is inadmissible.[7] Instead, Torres argues that if evidence of flight comes in, he may automatically introduce additional evidence "in denial or explanation" of his flight—in particular, his claim that he fled prosecution not due to consciousness of guilt, but instead due to his fear of retaliation by the Crips. (*See* Dkt. No. 418 at 10).

The Government agrees: where evidence of flight "is subject to varying interpretations . . . [t]he accepted technique is for the judge to receive the evidence and permit the defendant to bring in evidence in denial or explanation." *United States v. Massei*, 1997 WL 570788, at *1 (2d Cir. 1997) (internal quotation and citation omitted)). Thus, the relevant question here is not *whether* the defense can admit this alternative explanation evidence, it is *how* that evidence would be admitted. Torres appears to contemplate that he should be permitted to submit a carefully tailored, select portion of his own out-of-court statement, made to an official at the Metropolitan Detention Center ("MDC") in Brooklyn, New York, upon his arrival at that facility. He can do no such thing. As the Court is of course aware, any of the defendant's out-of-court statements, if offered for their truth by the defense, are inadmissible hearsay. *See* Fed. R. Evid. 801; *see also United States v. Jackson*, 180 F.3d at 73 (affirming the district court's ruling that recording excerpts proffered by the defendant consisted largely of the defendant's "own self-serving statements, which, as offered by him, are inadmissible hearsay"); *United States v. Marin*,

---

arrest him, which indicate that (1) he was aware law enforcement was seeking his arrest, (2) he was aware he was facing federal charges, and (3) he was attempting to obtain an attorney. These statements were promptly produced to the defense as Rule 16 material.

[7] In his opposition, Torres appears to assert that Torres's name was kept under seal when the S3 Indictment was unsealed on or about May 22, 2018. (*See* Dkt. No. 418 at 11 n.6.) This is inaccurate. As the docket reflects, the S3 Indictment was unsealed that day without redaction and, for the first time, Torres was publicly named as a charged defendant in this case.

669 F.2d at 84 ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."). Thus, the only way these self-serving statements can be introduced by Torres is if he takes the stand.

Moreover, if Torres does testify, and claims that his flight was unrelated to consciousness of guilt (or if he denies his membership in or leadership of the Rollin' 30s Crips, more generally), the Government will be entitled to impeach him with the remainder of his statement—a statement in which he *admitted* that "his rank was 'G'," which he went on to explain was just "four steps removed from the leader of the Crips nationally." (*See* Torres Statement, Gov't Ex. 2.) In other words, should Torres testify—as he would have to do, in order to admit his alternative explanation of flight—he will then face potential impeachment with the remainder of the statements he made to the MDC official. *See United States v. Steele*, 390 F. App'x 6, 12, 2010 WL 3025200, at *5 (2d Cir. 2010) (in the context of an alternative explanation for flight, noting the lack of authority for "the proposition that the district court should preclude the Government from introducing probative evidence of guilt on the basis that defendant's proposed defense would require him to prejudice himself").

To the extent that Torres would object to this line of impeachment, due to the fact that he made these statements in the course of seeking to be housed in the Special Housing Unit ("SHU") at MDC, away from his co-conspirators, that argument fails as well. In the ordinary course, statements like these—made to pretrial officials for purposes of processing defendants and ensuring inmate safety during pretrial detention—are inadmissible on the issue of guilt in a criminal judicial proceeding.[8] *See* 18 U.S.C. §§ 3153(c)(1), (c)(3). However, the Second Circuit

---

[8] It is for this reason that the Government is not otherwise seeking to admit Owen's statement to a Pretrial Services Officer in which he also admitted his membership in the Crips.

13

has held that such statements *are* admissible against a defendant when used to impeach the defendant's credibility. *United States v. Griffith*, 385 F.3d 124, 126 (2d Cir. 2004). Accordingly, Torres' pre-trial admission that not only was he a member of the Crips, but a high-ranking member, is admissible to impeach him should he choose to testify.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Government's initial motions *in limine* and responses, the Court should grant the Government's motions in their entirety.

Dated: New York, New York
       January 15, 2020

                          Respectfully submitted,

                          GEOFFREY S. BERMAN
                          United States Attorney

By:         /s/        
     Jessica Fender
     Anden Chow
     Jacqueline Kelly
     Assistant United States Attorneys
     (212) 637-2276 / 2348 / 2456